UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>DALE EDWARD BULLER,<br>Defendant. | 4:17-CR-40105-KES<br><br>ORDER |

**INTRODUCTION**

Defendant Dale Edward Buller is before the court on an indictment charging him with five counts of willful failure to file tax returns in violation of 26 U.S.C. § 7203. See Docket No. 1. Willful failure to file a tax return is a Class A misdemeanor punishable by up to one year imprisonment, a $25,000 fine, and up to one year of supervised release if a term of imprisonment is imposed. See 26 U.S.C. § 7203.

**FACTS**

Mr. Buller was arrested and made an initial appearance before this court on December 20, 2017. Prior to the hearing, the United States Marshals Service had attempted to photograph, fingerprint, and obtain a DNA sample from Mr. Buller via a buccal swab of his cheek. Mr. Buller refused to cooperate

in any of these three procedures. He also refused to be interviewed by pretrial services for purposes of preparing a bail report to the court.

During the hearing, Mr. Buller insisted it was his right to refuse to comply with the photograph, fingerprint and DNA procedures. He asserted those identifying characteristics belonging to him were "copyrighted" and the government had no right to obtain them from him. Subsequent to the hearing, Mr. Buller agreed to be fingerprinted and photographed, but still refused to submit to a DNA sample. The government indicated it would not waive the DNA sample issue. The court, therefore, ordered both parties to brief the issue of whether the taking of a DNA sample in Mr. Buller's case was (1) authorized by law and, if so, (2) whether the law was constitutional.

## DISCUSSION

**A.     The Taking of a DNA Sample is Authorized**

Federal law authorizes the taking of DNA samples from federal arrestees as follows:

> The Attorney General may, as prescribed by the Attorney General in regulation, collect DNA samples from individuals who are arrested, [or] facing charges, . . . under the authority of the United States.

See 34 U.S.C. § 40702(a)(1)(A).[1]

The same statute also authorizes the Bureau of Prisons (BOP) to collect DNA samples from persons convicted of federal crimes and in the custody of

---

[1] Section 40702 of Title 34 was formerly found at 42 U.S.C. § 14135a. It was transferred to 34 U.S.C. § 40702 effective September 1, 2017.

2

the BOP. See 34 U.S.C. § 40702(a)(1)(B). Collection of DNA from post-conviction individuals is limited to persons convicted of certain "qualifying Federal offense[s]." Id. The collection of DNA from pre-conviction federal arrestees is not limited to "qualifying" offenses. See 34 U.S.C. § 40702(a)(1)(A). For post-conviction prisoners, DNA is to be collected only from those convicted of a felony, a crime of violence, or an offense under chapter 109A of Title 18 (sexual abuse). See 34 U.S.C. § 40702(d). Therefore, quite anomalously, § 40702 does not restrict the collection of DNA from pretrial arrestees, but does restrict the collection of DNA from postconviction prisoners to only serious crimes. Compare 34 U.S.C. § 40702(a)(1)(A) with § 40702(a)(1)(B) and (d).

The Attorney General has implemented the authority granted to it under § 40702 by promulgating regulations. Under the regulations, any federal agency which arrests a person is required to collect DNA from that person so long as the collection is limited to those persons from whom the agency also collects fingerprints (unless otherwise limited or excepted by the Attorney General). See 28 C.F.R. § 28.12(b). Mr. Buller was arrested by a special agent of the Internal Revenue Service (IRS). The IRS directs its agents to obtain fingerprints, photographs, and DNA whenever one of its agents makes an arrest. See Internal Revenue Manual, Part 9 Criminal Investigations, Ch. 4 Investigative Techniques, Section 12 Arrests, § 9.4.12.13. See https://www.irs.gov/irm/part9/irm_09-004-012, last checked 01/04/2018. Therefore, because the IRS directs fingerprints be taken from arrestees like

Mr. Buller, the Attorney General's regulations also direct that DNA shall be taken.

Finally, the Bail Reform Act, the statute informing this court's determination whether to release Mr. Buller on bail and, if so, what conditions need be imposed, also addresses DNA collection. The Bail Reform Act provides that the court may release Mr. Buller on personal recognizance "subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a)."[2] See 18 U.S.C. § 3142(b). Because § 40702(a)(1)(A) and its implementing regulation, 28 C.F.R. § 2812(b), require the collection of DNA in Mr. Buller's case, the Bail Reform Act also requires the collection of a DNA sample from Mr. Buller as a condition of his release.

The court concludes based on the plain language of the various applicable statutes and regulations that the collection of a DNA sample from Mr. Buller is required as a condition of his release on bail. The court then turns to the question whether this requirement is constitutional.

**B.  Whether Collection of DNA from a Pretrial Misdemeanor Arrestee is Constitutional**

    **1.  Fourth Amendment**

The government never acknowledges any distinction in its analysis of the application of the above statutes to the fact that Mr. Buller is charged with

---

[2] Again, § 14135a was moved as of September 1, 2017, to 34 U.S.C. § 40702. See Footnote 1. The text of the Bail Reform Act has not yet been updated.

misdemeanor offenses only.  Mr. Buller chooses to represent himself in this matter and is not trained in the law.  Therefore, the parties have given the court little legal guidance on the issue.  It appears Mr. Buller is invoking the Fourth Amendment in support of his resistance to a DNA sample being drawn as he references the right to be secure in his person and property.  <u>See</u> Docket No. 13 at p.1.

The primary case addressing the issue generally of the constitutionality of collection DNA samples from pretrial arrestees under the Fourth Amendment is <u>Maryland v. King</u>, 569 U.S. 435 (2013).  The <u>King</u> decision was presaged by an earlier circuit court decision, <u>United States v. Mitchell</u>, 652 F.3d 387 (3d Cir. 2011).  Both opinions first clarified what is at issue scientifically.  "The DNA material in chromosomes is composed of 'coding' and 'noncoding' regions.  The coding regions are known as *genes* and contain the information necessary for a cell to make proteins. . . Non-protein-coding regions . . . are not directly related to making proteins."  <u>King</u>, 569 U.S. at 442 (quoting J. Butler, <u>Fundamentals of Forensic DNA Typing</u>, at 25 (2009)).  DNA samples for identification purposes are taken from noncoding regions and, thus, do not reveal a person's characteristics such as genetic traits or predispositions.  <u>Id.</u> at 443.  Further, DNA *samples* are distinguished from DNA *profiles*.  <u>Mitchell</u>, 652 F.3d at 412-13.  Samples may reveal private information such as genetic markers and traits, conditions and diseases, and familial lineage.  <u>Id.</u>  Profiles reveal only identity.  <u>Id.</u>  It is a DNA *profile* only which the DNA Act allows to be obtained from pretrial arrestees.  <u>Id.</u>

The King Court upheld a Maryland statute which allowed authorities to collect DNA from pretrial arrestees only if the defendant was charged with a crime of violence, an attempted crime of violence, or burglary or attempted burglary. King, 569 U.S. at 443. In addressing the Maryland statute in King, the Court noted the "arrestee is already in valid police custody for a serious offense supported by probable cause." Id. at 448. The Court held the constitutionality of the warrantless procedure must be determined by weighing the "promotion of the legitimate governmental interests" against "the degree to which [the search] intrudes upon an individual's privacy." Id. This balancing test, rather than a "special needs" test, is the same test the Third Circuit earlier determined should be applied. Mitchell, 652 F.3d at 402-03.

The King Court began by analyzing the legitimate governmental interests involved. The Court noted that arrest upon probable cause gives rise to the well-established search incident to arrest. King, 569 U.S. at 449-50. Furthermore, the government has a well-established right to identify the person it has arrested. Id. at 450-51. The Court noted that the "most devious and dangerous criminals" are often caught when they are detained for minor offenses such as speeding or driving without a license plate. Id. The Court noted the only difference between fingerprints and photos versus DNA samples is the "unparalleled accuracy DNA provides." Id. at 451.

Another legitimate governmental interest the Court noted is ensuring the custody of an arrestee does not create inordinate risks for jail staff, other

detainees, and for the new detainee. Id. at 452. The Court likened this to inspecting a detainee for certain gang tattoos. Id.

A third governmental interest identified by the Court was being able to evaluate a detainee's risk of flight. Id. A detainee who has been arrested for one offense but who knows he has another crime he has yet to answer for may have a greater incentive to flee. Id. at 453.

A fourth interest was assessing the arrestee's danger to the public should he be released on bail. Id. at 454. Also, such information is relevant to what conditions should be imposed as part of release on bail. Id. at 455.

A fifth governmental interest was in being able to facilitate the recapture of an arrestee if he does flee. Id. at 458. Although a suspect may change his appearance and even change his fingerprints, he cannot change his DNA. Id.

A final governmental interest was freeing someone wrongfully imprisoned for a crime for which the arrestee is implicated due to a DNA match. Id. at 455-56.

The Mitchell court noted more succinctly that the government's interest in DNA testing was to ascertain the arrestee's identity. Mitchell, 652 F.3d at 414. The government's interest in ascertaining an arrestee's identity has two components: (1) who that person is (name, date of birth, etc.); and (2) what that person has done (whether the person has a criminal record or has committed an as-yet-undetected crime). Id.

On the other side of the balance, the King Court considered the individual's interest. In doing so, the court considered the minimally invasive

7

nature of the buccal swab (a swipe of the inside of one's cheek with a swab), and also the arrestee's legitimate expectations of privacy in the situation. King, 569 U.S. at 461-62. The same invasion perpetrated on a member of the public at large might not pass muster as it would with a pretrial detainee because the legitimate privacy expectations of each are different. Id. A legitimate arrest supported by probable cause results in a diminished privacy expectation for the detainee. Id. at 462. It is well established that a search of one's person and property may be conducted upon a valid arrest, including a search of one's genitalia or other "relatively extensive exploration." Id. A buccal swab "does not break the skin, and it 'involves virtually no risk, trauma, or pain.'" Id. at 464.

The Court also noted the *processing* of the arrestee's DNA did not intrude on his privacy unconstitutionally because the type of DNA tested did not contain private medical genetic information and because the protections for testing and usage of DNA material provided for by the Maryland law adequately addressed privacy interests. Id. at 464-65. Specifically, the Maryland law, like federal law, prohibited the use of the DNA sample for any purpose other than identification and provided criminal penalties for persons who improperly used a DNA sample. Id.

Summarizing its holding, the Court stated: "When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a

8

legitimate police booking procedure that is reasonable under the Fourth Amendment." Id. at 465-66.

This court notes that the Maryland law allowed DNA collection only for certain serious felonies. King, 569 U.S. at 443. In summarizing its holding, the King Court stated its holding applied to persons arrested on probable cause "for a serious offense." Id. at 465-66. Although federal DNA collection law is not similarly limited to "serious offenses" for pretrial arrestees, the defendant in the Mitchell case *was* charged with a serious federal felony. Mitchell, 652 F.3d at 415 n.26.

Although the King Court included the modifier "serious felony" in its holding, this court has struggled to identify a case applying King to a misdemeanor arrestee such as Mr. Buller. The Mitchell court sounded a potential alarm about the federal DNA statute as applied to federal arrestees by noting that it would also apply to persons arrested on federal misdemeanor charges. Id. Because Mitchell was arrested on a federal drug felony--a serious federal felony--the court declined to address this potential issue in the Mitchell opinion because the scenario did not apply therein. Id.

This court has not located any definitive decisions holding that the federal DNA statute is constitutional (or unconstitutional) as applied to persons arrested on a federal misdemeanor charge. There are several reasons one might limit the King holding to serious federal felonies. The law has often drawn a distinction between the power of law enforcement over arrestees charged with only misdemeanor infractions. For example, police are not

9

allowed to make suspicionless strip searches of misdemeanor arrestees upon booking them into jail. Jones v. Edwards, 770 F.2d 739, 741-42 (8th Cir. 1985); N.G. v. Connecticut, 382 F.3d 225, 232 (2d Cir. 2004). Likewise, although all arrestees experience a diminished expectation of privacy, certainly common sense dictates if one is arrested for jaywalking one has a higher expectation of privacy than one who is arrested for rape, murder, or bank robbery. Still, the court has found no contrary authority on point.

There are two cases from this district dealing with searches applied to pretrial arrestees. In United States v. Koko Wilson, CR 11-40040, Docket No. 73 (D.S.D. Oct. 18, 2011), the court denied Wilson's motion to expunge his DNA sample from the FBI Combined DNA Index System (CODIS).[3] But in that case, Wilson too was charged with a serious federal felony—bank fraud. Id. at 1.

In United States v. Eastman, 256 F. Supp. 2d 1012, 1022 (D.S.D. 2002), the court stated: "[I]f a person has been properly arrested, it is of little significance whether certain types of in-custody investigation, such as fingerprinting and photographing, constitute a Fourth Amendment search and seizure; the investigation is lawful in any event because a lawful arrest was made." Eastman was charged with four felony counts of sexual abuse of a minor, also serious federal felonies. Id. at 1015.

---

[3] The Wilson court followed Mitchell and applied a totality of the circumstances test in which the legitimate governmental interests were weighed against Wilson's legitimate expectations of privacy. Wilson, Docket No. 73 at 8.

In Carter v. Huterson, 831 F.3d 1104, 1107-08 (8th Cir. 2016). The court held that a civilly committed sexually violent predator had a diminished expectation of privacy similar to a pretrial detainee and that, based on King, defendants were entitled to qualified immunity because they could reasonably have concluded no search warrant was required to obtain a DNA sample. This court assumes a "sexually violent predator" is someone who has been convicted of a sex-related violent felony. So, again, the decision does not apply to Mr. Buller's misdemeanor status.

Regarding the misdemeanor-felony distinction, the dissent in King deserves some discussion. Justice Scalia, dissenting in King (joined by Justices Sotomayor, Kagen and Ginsburg), posited his view that the primary reason for the DNA collection was not "identification" as the majority asserted, but rather it was criminal investigation. King, 569 U.S. at 466-76 (Scalia, J., dissenting). As such, the Fourth Amendment required a warrant or some degree of probable cause or suspicion, Justice Scalia asserted. Id.

Justice Scalia also criticized the analytic framework used by the King majority to evaluate the constitutionality of the statute, noting that the Court's balancing analysis did not allow for consideration of whether the crime of arrest was a minor infraction or a serious felony. Id. Justice Scalia stated that the majority's approach would result in "the dumping of a large number of arrestee [DNA] samples [into CODIS]—*many from minor offenders*—onto an already overburdened system." King, 569 U.S. at 480 (emphasis added). Justice Scalia noted that "[n]early one-third of Americans will be arrested for

11

*some* offense by age 23." Id. (citing Brame, Turner, Paternoster, & Bushway, *Cumulative Prevalence of Arrest From Ages 8 to 23 in a National Sample*, 129 Pediatrics 21 (2011) (emphasis added).

Justice Scalia debunked the majority's continual emphasis on the taking of DNA from those arrested for "serious offenses." Id. at 481. He pointed out that there was no inherent limitation in the King analysis which would support limiting that holding to serious offenses only. Id. Instead, Justice Scalia posited that "an entirely predictable consequence of today's decision [is that] your DNA can be taken and entered into a national DNA database if you are ever arrested, rightly or wrongly, and for whatever reason." Id. at 482.

Despite knowing what the dissent argued at the time the King majority issued its opinion, the King Court did not explicitly limit its holding to only serious felonies—as it easily could have done. The fact that it did not leads this court to conclude the majority knew the reach of its holding and chose to leave that extreme reach intact. Applying the King decision to Mr. Buller's case, there appears to be no reason to distinguish DNA collection from misdemeanor arrestees as opposed to felony arrestees. Several factors lead the court to this conclusion.

First, one of the stated purposes of the DNA Act when it was first enacted was to link evidence from unsolved crimes with DNA samples on file in CODIS. Mitchell, 652 F.3d at 399. Indeed, that was the whole point of Justice Scalia's dissent in King: the DNA collection is a more or less naked grab for evidence for law enforcement investigative purposes. This is borne out by the history of

12

the statute.  If that is the real purpose behind the statute, then whether a person is arrested on a misdemeanor charge or a felony charge would make no difference—the point is to try to find a DNA match between an arrestee and an unsolved crime.  If that is the aim, as the King majority pointed out, persons arrested on minor offenses are often found to have committed as-yet-undiscovered major crimes.  King, 569 U.S. at 450-51.

Second, many of the governmental interests identified in the King decision do not depend upon the classification of the crime of arrest.  Those governmental interests are furthered regardless of whether the defendant is arrested on a misdemeanor or a felony.  For example, identifying prior uncharged criminal conduct through DNA sampling would still inform the decisions whether to release the defendant, which conditions to impose if he is released, and whether he poses a threat to other inmates in a detention setting.  This is especially true if one accepts the King Court's premise that a present arrest on a minor infraction may be deceiving as to the true dangerousness of a defendant as revealed by knowledge of uncharged criminal conduct.

The balancing test as to the government's interests, then, is basically the same whether the crime of arrest is a misdemeanor or a felony.  What about the other side of the scale—the individual's legitimate expectations of privacy?  The minimal nature of the intrusion—a cheek swab—is the same whether the crime of arrest is a misdemeanor or a felony.  And one's expectation of privacy is diminished when one is arrested on probable cause, whether that probable

cause is for a felony or a misdemeanor.[4]  So both sides of the scale of the King balancing analysis are still the same when evaluating a misdemeanor arrest. Some commentators have observed that there is "little in King's logic [to] suggest[] that the Fourth Amendment bars the expansion of eligible offenses to minor crimes."  See Elizabeth E. Joh, *Maryland v. King*:  Policing and Genetic Privacy, 11 Ohio St. J. Crim. L. 281, 287 (2013).

It seems incongruous to this court that Congress would circumscribe *more* sharply the collection of DNA from post-conviction felons that it would the collection of DNA from pretrial arrestees.  Compare 34 U.S.C. § 40702(a)(1)(A) (no limitation for arrestees) with subsections (a)(1)(B) & (d) (limited to felons). But that appears to be exactly what Congress did.  Furthermore, the Attorney General's regulations clearly authorize the collection of DNA from misdemeanor arrestees.  See 28 C.F.R. § 28.12(b).

The court did find one lower-level state court decision touching upon this issue, People v. Lancaster, 373 P.3d 655 (Colo. Ct. App. 2015).  In 2009, a female victim was raped; the perpetrator was not apprehended but a DNA sample was taken from the victim and entered in CODIS and the Colorado state DNA database.  Id. at 658.  In 2010, Lancaster's DNA was collected pursuant to state law when he was arrested on a misdemeanor harassment charge and again a few months later when he was arrested on traffic violations. Id.  One of these buccal swabs in connection with Lancaster's misdemeanor

---

[4] Mr. Buller has been indicted by a grand jury, so there is probable cause in support of his arrest.

arrests resulted in a match with the earlier rape DNA and Lancaster was subsequently charged for crimes in connection with the rape.  Id.  Lancaster moved to suppress the DNA evidence arguing the taking of his DNA in connection with the misdemeanor arrests violated his Fourth Amendment rights.  Id.

The Lancaster court, relying on King, found that Lancaster's Fourth Amendment rights had *not* been violated by the taking of his DNA upon arrest for a misdemeanor case.  Id. at 660.  The court reiterated the above analysis under King's balancing test and found the balance in favor of the government unchanged in light of a misdemeanor arrest.  Id.

In a somewhat analogous state case, the California Court of Appeals for the Fourth District held that a person's Fourth Amendment and state privacy rights as well as her Equal Protection rights were not violated by the retention of her DNA in CODIS and the California state DNA database.  See People v. Harris, 15 Cal. App. 5th 47, 62-65, 222 Cal. Rptr. 3d 781, 792-94 (Cal. Ct. App. 2017).  The facts in that case are unique:  Taleia Harris had been convicted of a felony that was later reduced to a misdemeanor by virtue of a referendum passed by California voters.  Id. at 15 Cal. App. 5th at 51-52, 222 Cal. Rptr. 3d at 783-84.  Collection of DNA from felony arrestees is permitted under California law, but collection of DNA from misdemeanor arrestees is not.  Id. at 15 Cal. App. 5th at 53-54, 222 Cal. Rptr. 3d at 784-85.  Harris' DNA had been properly collected upon her felony arrest and entered into CODIS, but she claimed the retroactive reduction of her crime of conviction to a misdemeanor

15

entitled her to expungement of her DNA from the database. Id. The Harris court relied on the analysis in King to reach its holding that the denial of expungement to Harris did not violate her privacy/Fourth Amendment rights. Id. at 15 Cal. App. 5th at 62-65, 222 Cal. Rptr. 3d at 792-94.

This court tends to agree with Justice Scalia that the primary purpose of the DNA collection statute is criminal investigation. As such, this court also agrees that the Fourth Amendment should require a warrant or some level of suspicion before the search of one's DNA is allowed. However, until the King decision is modified or repudiated, it remains the law of the land and this court is bound to apply it. Because the analysis under King and the rationale for the conclusion in King cannot be meaningfully distinguished in the case of a misdemeanor arrestee, and because there is no federal law decided in the five years since the King decision was issued making such a distinction, the court concludes that the collection of DNA from Mr. Buller is constitutional under the Fourth Amendment.

### 2. Fifth Amendment

Mr. Buller also appears to invoke his Fifth Amendment right not to be compelled to testify against himself. See Docket No. 13 at p. 1. The taking of DNA is not testimonial evidence and, therefore, is not protected by the Fifth Amendment. Kaemmerling v. Lappin, 553 F.3d 669, 686 (D.C. Cir. 2008); United States v. Reynard, 473 F.3d 1008, 1021 (9th Cir. 2007); United States v. Bean, 214 Fed. Appx. 568, 571 (6th Cir. 2007); United States v. Hook, 471

F.3d 766, 773-74 (7th Cir. 2006).  Therefore, the collection of Mr. Buller's DNA does not violate the Fifth Amendment's protection against self-incrimination.

## CONCLUSION

The court has evaluated Mr. Buller's objection to giving a DNA sample and concluded he has provided the court with no legal basis for that objection. The government has provided legal authority directly applicable to the issue which would require Mr. Buller to give a DNA sample.

Failure to cooperate in the collection of a DNA sample is a class A misdemeanor.  Id. at (a)(5)(A).  Furthermore, the court notes that the DNA act authorizes the Attorney General to use whatever means are *reasonably* necessary to collect a DNA sample from a defendant who refuses to cooperate in the collection of his DNA.  See 34 U.S.C. § 40702(a)(4)(A).  The court therefore orders Mr. Buller to cooperate with the taking of his DNA.

**The court also orders the government to wait until the below-noticed appeal period expires before taking Mr. Buller's DNA sample and, if an appeal is lodged by Mr. Buller, to wait until that appeal is resolved before taking Mr. Buller's DNA.**

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CRIM. P. 58(g)(2); 59(a). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. FED. R. CRIM. P. 59(a). Objections must be timely and specific in order to require review by the district court.

DATED January 5, 2018.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge